**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Joseph Edward Brittain and<br>Patricia Kay Brittain,<br><br>Debtors. | C/A No. 10-01515-JW<br><br>Chapter 13<br><br>**AMENDED ORDER** |

THIS MATTER comes before the Court on the Motion of Tennessee Commerce Bank ("TCB") for Relief From the Automatic Stay (the "Motion") on the basis that certain personal property scheduled by the Debtors does not constitute "property of the estate," as defined under 11 U.S.C. § 541,[1] or in the alternative, for cause, pursuant to § 362(d)(1). Joseph Edward Brittain and Patricia Kay Brittain (collectively, "Debtors") filed an Answer to the Motion, asserting that TCB is adequately protected. Upon consideration of the pleadings in the matter and the arguments and evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[2] This Order further formalizes the ruling announced by the Court at a hearing on July 13, 2010 and amends the Order entered on July 26, 2010.

**FINDINGS OF FACT**

1. Debtors are the sole members of J & P Transport, LLC ("J&P"), a limited liability company organized and existing pursuant to the laws of the state of South Carolina. J&P's business involves transport of containers by truck.

---

[1] All further references to a section are to Title 11 of the United States Code.
[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the following conclusions of law constitute findings of fact, they are so adopted.

2. On May 21, 2008, J&P executed a promissory note in favor of TCB in the principal amount of $44,725.00 to finance the purchase of a 2003 Freightliner Classic XL Truck (the "Collateral") to be used in J&P's business. The promissory note was signed by Debtors in their capacity as the members of J&P.

3. On the same date, J&P executed a commercial security agreement granting TCB a security interest in the Collateral. The commercial security agreement was signed by Debtors in their capacity as members of J&P. TCB perfected its security interest by noting its lien on the Collateral's certificate of title issued on May 26, 2008.

4. On May 21, 2008, each Debtor, as an individual, executed a guaranty of all indebtedness of J&P to TCB.

5. There was a prepetition default under the terms of the promissory note and security agreement and TCB asserts a right to repossession of the Collateral.

6. On March 2, 2010, Debtors filed a joint petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code"). J&P has not filed a petition for relief under any chapter of the Bankruptcy Code.

7. Debtors' Schedules list the Collateral as their personal property and as an asset of their bankruptcy estate (the "Estate"). The Collateral is listed as having a current value of $36,000.00.[3]

8. On March 2, 2010, Debtors filed their Chapter 13 Plan (the "Plan"). The Plan proposes to repay the secured debt to TCB as a personal debt at an interest rate of 5.25%. The Plan has not yet been confirmed, and TCB has filed an objection to confirmation.[4]

---

[3] At the hearing Debtors submitted evidence that the retail value of the Collateral is actually $26,835.
[4] Subsequent to the announcement of this ruling, Debtors have filed an amended plan.

9. On April 14, 2010, TCB filed the Motion, requesting relief from the automatic stay pursuant to § 362(d)(1) for cause, or as alternative relief, an order finding that the automatic stay provided by § 362(a) does not apply to the Collateral, because it is not property of the Estate.

10. On April 29, 2010, Debtors filed an answer to the Motion, contending that TCB was adequately protected and that therefore it was not entitled to relief from the stay.

11. A hearing on the Motion was held on May 18, 2010. At the hearing, Mr. Brittain acknowledged that he was aware that the Collateral was titled in the name of J&P and acknowledged that J&P continued to operate.

12. Mr. Brittain also testified that J&P maintains a separate checking account and that all prepetition payments to TCB were made from J&P's account. Mr. Brittain further testified that the Collateral had been leased to and is in the possession of a third party and that J&P, as the owner of the Collateral, was the lessor.

13. The Court announced its ruling on July 13, 2010 that the Collateral was not property of the Estate, but that Debtors may still request turnover and assert a right of redemption as guarantors through amended schedules and an amended Chapter 13 plan. An Order indicating that ruling was entered on July 26, 2010.

## **CONCLUSIONS OF LAW**

This Order addresses the latest in a series of cases in which a debtor seeks to provide for secured debt under a Chapter 13 plan despite the fact that the collateral is owned or titled in the name of another non-debtor party. In such cases, the debtor relies upon possession of the collateral as the basis for including the property in his schedules and statements of affairs and in

his Chapter 13 plan and asserting the protection afforded property of the estate by the automatic stay.

Section 362(a) provides that, with certain exceptions, the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, the automatic stay does not stay actions against property that is not property of the estate. In re Moore, 410 B.R. 439, 441 (Bankr. E.D. Va. 2009) (emphasis added). Section 541(a) defines "property of the estate" as "all legal or equitable interest *of the debtor* in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). For the reasons set forth below, the Court finds that TCB's motion should be granted.

I. **Do Debtors Have a Legal Ownership Interest in the Collateral?**

The Court first finds that Debtors have no legal ownership interest in the Collateral. Rather, such rights in the Collateral belong to J&P. While federal law creates the bankruptcy estate, the determination of property rights is controlled by state law. American Bankers Ins. Co. v. Maness, 101 F.3d 358, 363 (4th Cir. 1996). As this Court has previously noted, "[u]nder South Carolina law, a corporation is an entity, separate and distinct from its officers and stockholders." In re Jones, C/A No. 10-00724-jw, slip op. at 4 (Bankr. D.S.C. Mar. 31, 2010) (citing Dewitt Collateral Brokers, Inc. v. W. Ray Flemming Fruit Co., 540 F.2d 681, 683 (4th Cir. 1976)); see also, S.C. Code Ann. § 33-44-201 (2009) ("A limited liability company is a legal entity distinct from its members."). The members of an LLC "have no property interest in property owned by [the LLC]." Comment to S.C. Code Ann. § 33-44-501. Instead, a member holds a distributional interest in the LLC.[5] S.C. Code Ann. § 33-44-501. It follows that a

---

[5] A "Distributional Interest" is "all of a member's interest in distributions by the limited liability company." S.C. Code Ann. § 33-44-101(6). A "Distribution" is "a transfer of money, property, or other benefit from a limited

4

member's bankruptcy estate has no interest in property of an LLC and that the estate's property interest is limited to the member's distributional interest.  See In re Moore, 410 B.R. at 442 ("[A]lthough the debtor's interest in a corporation becomes property of the estate when a bankruptcy petition is filed, the corporation's property does not thereby become property of the shareholder's estate.")[6]

Here, the record clearly indicates that the Collateral is the property of J&P and not of Debtors:  the Collateral is titled in the name of J&P, the promissory note was made by J&P, and J&P granted a security interest in the Collateral pursuant to the security agreement.  South Carolina law expressly provides that the members of an LLC have no property interest in the property of an LLC.  As such, the Court finds that Debtors have no legal ownership interest in the Collateral.

## II.    Do Debtors Currently Have an Equitable Interest in the Collateral?

Having found that Debtors have no legal ownership interest in the Collateral, the Court next turns to Debtors' alleged equitable interest.

### 1.    Possessory Interest Alone is Insufficient to Constitute Property of the Estate

Debtors contend that they have possession of the Collateral, and therefore hold an equitable interest in the Collateral such that the Collateral constitutes property of the Estate.  In taking this position, Debtors rely upon this Court's prior decision in McGuffin v. Barman (In re BHB, LLC), C/A No. 97-01975, Adv. No. 97-80201 (Bankr. D.S.C. Aug. 27, 1997).

However, BHB is distinguishable from the case at hand, and as discussed below, the debtor in that case had more than mere possession of the subject property.  In BHB, the

---

liability company to a member in the member's capacity as a member or to a transferee of the member's distributional interest.  S.C. Code Ann. § 33-44-101(5).

[6]    The Court notes that Debtors did, in fact—as required under the Bankruptcy Code—list their interest in J&P as an asset of the Estate on their Schedule B.

5

owner/operator of a to-be-formed corporate debtor entered into a land sale contract with a third-party seller. When the corporate debtor was subsequently formed, the terms of its operating agreement provided that the land subject to the land sale contract would be the "First Site" for the debtor's business. However, the owner/operator never completed the transfer of his rights under the land sale contract to the debtor nor did the owner/operator and debtor enter into a lease. The corporate debtor was later placed into involuntary bankruptcy and the third-party seller filed and ultimately obtained a judgment as a result of a state court action against the non-debtor owner/operator for breach of the land sale contract. The Chapter 11 trustee in the bankruptcy case brought an adversary proceeding seeking to have the state court judgment set aside as void because it violated the automatic stay. In holding for the trustee, this Court found that the estate had a sufficient possessory right in the property to invoke the automatic stay due to debtor's actual and exclusive possession of the property in light of the terms of the operating agreement. Id. at 7.

The debtor in BHB was able to establish a colorable basis for possession separate from the owner/operator due to the fact that when the debtor was formed, the owner/operator set forth in the operating agreement that the subject land would be the site of the debtor's business. While such a provision in an operating agreement was insufficient to transfer any legal interest to the debtor, it did show an intent on the part of the owner/operator to grant the debtor rights in the property. As such, the property was subject to the automatic stay because the debtor had actual and exclusive possession along with a sufficient equitable claim for possession.

This Court subsequently confirmed the reasoning of BHB in In re Anderson, 2004 Bankr. LEXIS 2359 (Bankr. D.S.C. Apr. 15, 2004). In Anderson, individual debtors attempted to void a foreclosure sale of real property belonging to their non-debtor corporation as a violation of the

6

automatic stay arising in their preceding personal chapter 13 case. The debtors argued that their presence at the real property during their Chapter 13 case constituted a sufficient interest to make the real property part of their bankruptcy estate pursuant to § 541. In rejecting the debtors' arguments, this Court noted that a debtor "should, at the very least, demonstrate some good-faith, colorable claim to or basis for possession of" property separate from their capacity on behalf of the non-debtor corporation in order to trigger application of the automatic stay where the estate's interest in the property arises solely through possession. Id. at 7; see also Twin Rivers Lake Apts. Horizontal Prop. Regime, Inc. v. Wallner, 2006 U.S. Dist. LEXIS 48555, at *26 (D.N.J. July 18, 2006) (holding that in the absence of a colorable legal interest in property, the debtor did not have a "possessory interest" sufficient to invoke the automatic stay).

This Court recently revisited the issue of whether mere possession of property is sufficient to establish an equitable interest that would trigger the automatic stay in In re Johnson, 429 B.R. 540 (Bankr. D.S.C. 2010). In Johnson, an individual debtor listed personal property owned by a non-debtor corporation in her schedules and attempted to administer and value the property under her Chapter 13 plan.[7] In that case, the debtor did not have an interest in the non-debtor corporation, but was an employee of the non-debtor corporation using the personal property in the operation of the business of that corporation. In rejecting the debtor's argument that her possession of the property, without more, gave rise to the automatic stay, this Court noted that the debtor failed to demonstrate a good-faith, colorable claim or basis for her assertion of a personal right of possession of the collateral separate from the non-debtor corporation in

---

[7] The Court notes that in Johnson and this case, the subject plans had not been confirmed and are therefore distinguishable from In re Thomas, C/A No. 96-79381, slip op. (Bankr. D.S.C. Jul. 11, 1997) and In re Dendy, 396 B.R. 171 (Bankr. D.S.C. 2008), cases in which this Court found that creditors were bound by confirmed plans valuing their secured claims due to their failure to object to confirmation. Unlike Johnson and this case, in Thomas and Dendy, orders confirming the plans were entered and the property addressed by the confirmed plans was clearly property of the estate.

7

order for the automatic stay to apply.  Id. at 544-45.  Additionally, the fact that the collateral was leased to a third party by the non-debtor corporation and not the debtor and was actually under the control of the third party supported a finding that the debtor held neither a sufficient legal nor equitable interest in the collateral to be protected by the automatic stay.  Id. at 545.  The Court also denied debtor's argument that her guarantee of the debt was sufficient to distinguish prior precedent by holding that the mere execution of a guaranty does not establish a sufficient interest in the collateral to protect the collateral as property of the estate.  Finally, this Court also noted in Johnson that "the fact that [the non-debtor corporation] is solely owned by the [d]ebtor's brother precludes her from making a derivative claim of interest in the [c]ollateral pursuant to an ownership interest in [the non-debtor corporation]." Id.

Debtors' initial argument in this case was to distinguish Johnson and argue that their ownership interest in the LLC along with their possession of the Collateral is sufficient to trigger the automatic stay.  However, such an interpretation is not supported by a reasonable reading of Johnson.  Furthermore, such a reading would be clearly in opposition to provisions of the Uniform Limited Liability Company Act of 1996, S.C. Code Ann. § 33-44-101 et al (the "LLC Act"), which, as set forth above, provides that members of an LLC have *no* interest in the property of the LLC.

To the extent that Debtors assert a possessory interest in the Collateral, the Court finds that their present possession of the Collateral is as agent or representative of J&P and therefore, is not a right protected by the automatic stay in this case.

    2.    No Equitable Interest Exists Pursuant to a Resulting Trust

Under this Court's holding in In re Rivers-Jones, 2007 Bankr. LEXIS 2992 (Bankr. D.S.C. Sept. 4, 2007), a debtor may hold an equitable interest in property without holding title

8

thereto under the theory of a resulting trust. Under South Carolina law, a resulting trust arises in equity "to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." Bowen v. Bowen, 575 S.E.2d 553, 556 (S.C. 2003). "Generally, when property is conveyed to one person and the consideration is paid by another, a resulting trust arises in favor of the party who pays the purchase money because it is presumed that the payor intended a benefit to himself." In re Rivers-Jones, 2007 Bankr. LEXIS 2992, at *9.

In Rivers-Jones, the debtor's grandmother executed the loan agreements related to financing of a mobile home, which was also titled in the name of the debtor's grandmother. However, the debtor, and not the grandmother, resided in the home and made prepetition payments to the creditor for approximately ten (10) years. The debtor subsequently filed a Chapter 13 petition and plan providing for valuation of the mobile home, and the creditor objected to confirmation, arguing that the mobile home was not property of the estate. This Court overruled the objection, finding that because the debtor had made all of the payments and it was the intent of the debtor and her grandmother for the debtor to have some interest in the mobile home, the mobile home constituted property of the estate. Id. at *9-10.

However, the facts of this case do not support a resulting trust. While Mr. Brittain's testimony reflects some question as to whether Debtors intended to title the Collateral in the name of J&P or themselves personally, the Court need not make such a determination. Even if Debtors were able to demonstrate that they intended to provide themselves with an ownership interest in the Collateral, there is no evidence showing that Debtors, as individuals, paid for the Collateral in whole or in part – a necessary requirement for a finding of a resulting trust. In fact, Mr. Brittain testified that all payments made to TCB for the Collateral were made from J&P's

9

business account and not that of Debtors. As a result, the Court finds that Debtors do not have an equitable interest in the Collateral pursuant to a resulting trust.

### III.     Debtors' Future Right of Redemption

Subsequent to the hearing and for the first time in their proposed order,[8] Debtors asserted a new basis for retaining the Collateral: their right of redemption as secondary obligors under Section 9-623 of the Uniform Commercial Code ("UCC"), adopted by the Tennessee Code at § 47-9-623.[9] Section 47-9-623 provides a guarantor with a right to redeem collateral by tendering fulfillment of all obligations secured by the collateral and reasonable expenses and attorney's fees. See T.C.A. § 47-9-623(b). Furthermore, redemption may occur "at any time before" a secured party has collected, accepted or disposed of the collateral. See T.C.A. § 47-9-623(c). While the Court could not locate any precedent analyzing the effect of a guarantor's right of redemption in a case such as the one before the Court, it is instructive to analyze the interpretation of related provisions of the UCC in In re Moffett, 356 F.3d 518 (4th Cir. 2004).

In Moffett, the United States Court of Appeals for the Fourth Circuit recognized that a debtor's right of redemption as obligor under UCC 9-623 is an equitable interest sufficient to trigger the protections of the automatic stay and a right to turnover of possession back to the debtor from the secured creditor. The court found that the debtor's redemptive rights could be exercised through a Chapter 13 plan that provided for the payment of all outstanding debts (fulfillment of all obligations secured by the collateral) over time. Finally, the court indicated that such rights were not dependent upon a prior determination of legal ownership of the vehicle in question.

---

[8]     The Court allowed TCB additional time and an opportunity to file a brief in opposition to Debtor's late assertions.
[9]     Tennessee law governs according to the contract.

The Court believes the analysis and holding in Moffett are instructive for this case. If properly provided for in the schedules, statements, and a plan, it appears that a debtor, as guarantor, may assert a right of redemption as property of the estate, seek turnover to obtain personal possession of the applicable collateral, and provide for the exercise of the right of redemption through a Chapter 13 plan.[10] However, Debtors did not assert these rights in the Schedules, Statements of Affairs, or the Plan pending at the time of the hearing on the Motion—the claim being asserted for the first time in a post-trial proposed order. Furthermore, Debtors' present basis for possession of the Collateral is on behalf of J&P, which in fact has leased the collateral to a third party, and TCB, while asserting a default, has not yet taken possession.

Even in recognizing the potential application of the Moffett analysis in such situations, TCB has met its burden of proof and should presently be granted relief from stay to exercise its UCC rights against the Collateral in the possession of J&P. Since Debtors do not have an existing property right such as title in the Collateral at this time, absent an agreement among the parties to the contrary, each of these steps—granting relief from the stay to allow repossession of the Collateral from J&P, a turnover demand and demonstration of adequate protection by Debtors, and the proper exercise of redemptive rights through a Plan by Debtors—would be necessary for Debtors to establish a personal right of possession in this case.[11]

## CONCLUSION

For the foregoing reasons, the Court finds that the Debtors had asserted no legal or equitable interest in the Collateral nor sufficiently asserted or exercised a claim of redemptive rights as secondary obligors as of the hearing on the Motion, and that therefore the Collateral is

---

[10] In future cases, debtors should explicitly identify in the schedules, statements, and plan if the property interest claimed is based upon UCC redemptive rights.

[11] Issues regarding turnover and adequate protection may require the transfer of title from the name of J&P, affect tax payments and insurance, and may necessarily alter the present status and use of the Collateral.

not property of the Debtors or their Estate. As a result, TCB's Motion is granted to the extent it requests relief from the automatic stay. However, such a finding does not preclude Debtors from exercising their right of redemption or other state law rights in the future.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/16/2010**



Entered: 08/17/2010

/s/ John E. Waites

Chief US Bankruptcy Judge
District of South Carolina

12